UNION FURNITURE CO. et al. v. WALKER-COOLEY
FURNITURE CO. et al.

(District Court, N. D. Georgia.  May 3, 1913.)

1. BANKRUPTCY (§ 386*)—PROCEEDINGS TO SET ASIDE COMPOSITION—PROOF OF FRAUD.

A composition accepted by the requisite number of creditors of a bankrupt cannot be set aside on the ground that it was procured by fraud, where all the facts relied on to constitute the fraud were disclosed at the examination which preceded the composition, and were then known to the creditors accepting.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 606; Dec. Dig. § 386.*]

2. BANKRUPTCY (§ 386*)—PROCEEDINGS TO SET ASIDE COMPOSITION—SUFFICIENCY OF EVIDENCE.

A petition to set aside a composition by a bankrupt is not sustained by evidence which merely creates a suspicion as against the positive undisputed testimony of witnesses.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 606; Dec. Dig. § 386.*]

In Equity.  Suit by the Union Furniture Company and others against the Walker-Cooley Furniture Company and others.  Decree for defendants.

· F. M. Hughes and Westmoreland Bros., all of Atlanta, Ga., for complainants.

· W. W. Visanska, of Atlanta, Ga., for defendants Walker-Cooley Furniture Co., G. W. Cooley Mfg. Co., and G. W. Cooley Furniture Co.

Rosser & Brandon, of Atlanta, Ga., for defendants Fourth Nat. Bank, of Atlanta, and Atlanta Woodenware Co.

Morris Macks, of Atlanta, Ga., for defendants Cooley Furniture Co. and Garner Furniture Co.

NEWMAN, District Judge. This is a proceeding to set aside a composition in bankruptcy made by the Walker-Cooley Furniture Company, against whom an involuntary petition in bankruptcy was filed the 21st day of October, 1912. There was a stay of adjudication for the purpose of allowing the offer of composition to be made, which was made and the same was referred to the referee. A meeting of creditors was held on December 12, 1912, at which the president of the alleged bankrupt corporation was examined in open court. At this meeting of creditors unsecured claims to the amount of $14,058.72 were filed and allowed, and it was found that the appraisers had valued all of the property of the alleged bankrupt corporation at $10,373.33. The referee's report shown that 51 creditors, making a majority in number of the claims, and $12,272.38, making a majority in amount, had accepted the offer of composition. On the hearing for the confirmation of the composition by the court it seems that other creditors had come in and accepted, at all events it was represented, and appeared to be true, that a very large majority in number and amount had accepted the composition offered by the alleged bankrupt corporation, and no objection whatever, of any kind, was made to the confirmation of the composition. Therefore the composition was duly confirmed by the court.

This proceeding is instituted to set aside the composition on several grounds. After the defendant had filed an answer denying all the alleged grounds, the case was referred to a master to take testimony, and testimony has been taken and is before the court. The Walker-Cooley Furniture Company was engaged in the furniture business on Forsyth street in Atlanta, Ga. It might be called, as it has been frequently called in the argument, the parent company. There were two other corporations engaged in the same business in which G. W. Cooley, who is the main man in all the business, was a stockholder. After the matter had been fully gone into in taking testimony and after argument before the court, the grounds relied upon to set aside the composition were very clearly stated by counsel for the creditors seeking to set aside the composition. In addition to the Walker-Cooley Furniture Company, there were three other corporations, the Cooley Furniture Company, in which G. W. Cooley and H. O. Cooley, his brother, were stockholders, having a place on Decatur street in Atlanta, Ga., the G. W. Cooley Manufacturing Company, incorporated at the same time as the Cooley Furniture Company with a capital stock of $1,000, and the G. W. Cooley Furniture Company, with a capital stock of $10,000, in which G. W. Cooley and his wife were stockholders, in-

corporated in July, 1912. These three corporations, and especially the Cooley Furniture Company and the G. W. Cooley Furniture Company, bought their furniture from the Walker-Cooley Furniture Company, and all were engaged in selling furniture on what are called leases—that is, on the installment plan—selling generally, if not entirely, to negroes. The G. W. Cooley Manufacturing Company cuts little figure in the case as it is finally presented to the court.

Mr. G. W. Cooley, who was the main actor in all these matters, would have the bookkeeper for the Walker-Cooley Furniture Company credit the G. W. Cooley Furniture Company and the Cooley Furniture Company with the entire amount of their indebtedness at the end of each month and charge the same to him individually, then, according to his testimony, he would pay the Walker-Cooley Furniture Company such amounts by paying off the bills of the Walker-Cooley Furniture Company and otherwise. The movants in this proceeding claim that this was not true according to the whole record as presented to the court. G. W. Cooley claims positively that such was the case, and has so testified. The books show that the matter was handled as he claims; that is, so far as the accounts of these two outside concerns having been charged to him. The bank books of the respective corporations are in evidence, but it is almost impossible for me to ascertain anything definite about them. Also what are said to be extracts from the books of the Walker-Cooley Company. The general claim is that all of these concerns were simply one establishment, being run by G. W. Cooley himself, and that his brother and his wife were mere figureheads, and that all of the assets of the three concerns should have gone into the composition.

It appears that in February last the Cooley Furniture Company had $700 worth of furniture in stock and about $8,000 worth of leases, and the G. W. Cooley Furniture Company had $800 worth of furniture in stock and about $10,000 worth of leases. It is assumed that this is something like what they had at the time of the confirmation of the composition in the Walker-Cooley Company Case. This, except some notes made by the Garner Furniture Company, as the contentions are now made, is the property that it is claimed was fraudulently withheld from the knowledge of the creditors for the Walker-Cooley Furniture Company at the time the composition was proposed, when G. W. Cooley was examined, and when the composition was confirmed.

I think as to the Garner notes a fair showing has been made that these notes were used at the Fourth National Bank of Atlanta prior to the time the bankruptcy proceedings were instituted against the Walker-Cooley Furniture Company. My understanding is that, while the amount was due to the Walker-Cooley Furniture Company, the notes were made to G. W. Cooley, who says he used the notes in the Fourth National Bank for the benefit of the Walker-Cooley Furniture Company. There seems to be no denial of this, except the general suspicion that the whole transaction was wrong. I understand Mr. Garner and Mr. Cooley both to have testified that these notes were in the Fourth National Bank, and they are probably the property of the bank.

As to the furniture and leases in the hands of the Cooley Furniture Company and the G. W. Cooley Furniture Company, no very clear showing is made by the movants, while they do raise a very strong suspicion. G. W. Cooley's testimony is positive that the amounts due by the G. W. Cooley Furniture Company and the Cooley Furniture Company for furniture bought by them from the Walker-Cooley Furniture Company were paid to him by notes and he used the notes for the benefit of the Walker-Cooley Furniture Company. His testimony on this subject is only contradicted by circumstances because it is impossible, as I have stated above, to get anything definite from the transcripts from the books or from the bank books or otherwise. It is said that G. W. Cooley had these outside concerns for the purpose of putting his property into them and outside of the Walker-Cooley Furniture Company so as to be ready for bankruptcy with the Walker-Cooley Furniture Company. This is hardly supported by the evidence, because it seems to show very clearly that Mr. Cooley tried every way to avoid the bankruptcy of the Walker-Cooley Furniture Company. He seems to have been trying every way possible to raise money to tide him over and thereby avoid bankrupt proceedings. But, be this as it may, I do not believe any one would ever be able to reach any very satisfactory conclusion upon this branch of the case. The proceeding here is controlled, it seems to me, by another matter.

[1] It is said that the property of these outside concerns was fraudulently withheld from the knowledge of the creditors at the time the composition was proposed and carried through. It is shown that a regular meeting of creditors was called, that they all had the usual notice and the opportunity to be present. G. W. Cooley, the leading man of the Walker-Cooley Furniture Company, and president of the same, was examined by counsel for the petitioning creditors and many other creditors at the time of this examination, Mr. W. S. Dillon. Mr. Dillon is a lawyer of character and standing at the bar in Atlanta, and has testified in the present proceeding. He states in his testimony that the firm with which he is connected, Anderson, Felder, Rountree & Wilson, were the attorneys for the petitioning creditors in the bankruptcy proceeding against the Walker-Cooley Furniture Company, and represented the majority in number and amount of the creditors. He says that he represented the Union Furniture Company, one of the complainants in this application to set aside the composition, that he represented the Blue Ridge Furniture Company, another complainant in this proceeding, and, in fact, all of the original petitioners in the present matter except the Teschner Leaf Company. Mr. Dillon further testifies that practically all the facts that were brought out on the examination before the special master in the present matter were brought out in the examination before the referee looking to the acceptance of the composition. Mr. Dillon states that he had had correspondence with clients of his out of town, and had had the matters which are made the subject of this motion brought to his attention, and that he thoroughly investigated the same. He states that he knew of the relationship of G. W. Cooley to the G. W. Cooley Furniture Company, and that the statement made by Mr. Cooley in the present

matter was in no wise different from that made by him on his examination before the referee.   He says:

"The substance of his evidence on that question before the referee was the same as it was before the master."

He says that he knew of Mr. Cooley's relation to the Cooley Furniture Company also, that he learned of it in various ways, that he learned it in detail by examining him under oath before the referee, and that he knew of the transactions of the Garner Furniture Company, he "knew it as it is stated now by Mr. Garner and Mr. Cooley." Mr. Dillon said that he would not be positive about it, but he thinks he represented the majority of the claims against the Walker-Cooley Furniture Company at the time of the composition.   On a very thorough cross-examination Mr. Dillon reiterated all this, and adhered to the statement that he knew at the time of the examination of Mr. Cooley before the referee and at the time of the confirmation of the composition all that it now known or claimed by the movants here.   It will be impossible, therefore, to hold that these assets of the G. W. Cooley Furniture Company and the Cooley Furniture Company and the Garner Furniture Company notes were fraudulently withheld from the knowledge of the creditors of the Walker-Cooley Furniture Company or from the bankrupt court unless we reject entirely the testimony of Mr. Dillon.   If, with the knowledge of all the facts, a composition is accepted, and if the alleged bankrupt disclosed fully the extent of his assets, I do not see how it can be set aside on the ground of fraudulent representations.

It appears further to me that it is shown with reasonable satisfaction that the alleged bankrupt corporation got every dollar it could to effect this composition.   I do not understand that any fraudulent conduct of any character or anything wrong could be attributed to Mr. Gershon in this matter, and he declined, according to the evidence here, to lend more than the $6,100 to make this composition and pay the expenses.   The Walker-Cooley Furniture Company not only transferred to Mr. Gershon all the property of the Walker-Cooley Furniture Company to secure him for this money, but G. W. Cooley transferred to him his one-half of the stock in the G. W. Cooley Furniture Company and the Cooley Furniture Company and gave a mortgage on a certain small piece of real estate, probably subject to some other incumbrance.

It seems, also, from this record that the true state of affairs must not only have been known to Mr. Dillon, of counsel for the creditors, but from what he states as to his correspondence it must have been known to many people having an interest in the matter.   Notwithstanding all this, every creditor either expressly accepted the composition, which was true of a considerable majority in number and amount, or they failed to make any objection to the same although having notice of the offering and of the hearing.

There has been offered in evidence a report made by the Walker-Cooley Furniture Company to the Dunn Mercantile Agency, showing a much larger amount of assets than seemed to be on hand at the time of the filing of the petition in bankruptcy, certainly a much larger amount if the leases are considered as being worth anything like their

face value. If creditors have been deceived and defrauded by such statement, they have their remedy under a recent decision of the Supreme Court of the United States in the case of Henry Friend et al., Petitioner, v. James Talcott, 228 U. S. 27, 33 Sup. Ct. 505, 57 L. Ed. ——, decided April 7, 1913, which is a very interesting case as to fraudulent representations and the rights of creditors.

[2] Since the argument I have gone over the evidence, that which was material here very carefully indeed, and the more I examine it the stronger the conviction grows on me that this is not a case in which the composition can be set aside. Mere suspicion should not be allowed to prevail over the positive testimony of undisputed witnesses. The prayer to set aside the composition, reopen the case, and appoint a receiver is denied, and the temporary restraining order heretofore granted is dissolved.

I find a bill in the record in favor of the stenographer for taking the testimony before Mr. Callaway, the master in this case, for $215. Inasmuch as this evidence was taken by both parties and used for the benefit of both parties on the hearing, I think the expense of the same should be divided. The fee of Mr. Callaway, the master, can be charged when same is fixed.